IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SUSAN McKENZIE-NEVOLAS,      )
                              )
        Plaintiff,            )
                              )
v.                            )   Case No. CIV-12-570-D
                              )
DEACONESS HOLDINGS LLC.,      )
                              )
        Defendant.            )

**O R D E R**

Plaintiff has filed a motion for partial summary judgment [Doc. No. 84] on her disability and retaliation claims. Defendant has responded to that motion [Doc. No. 89] and Plaintiff has filed a reply [Doc. No. 103]. Defendant has filed a motion for summary judgment [Doc. No. 106] to which Plaintiff has filed a response [Doc. No. 114] and Defendant has filed a reply [Doc. No. 117].

In her Complaint, Plaintiff alleges that she suffers from serious medical conditions and disabilities. Complaint at ¶ 6. She alleges that she was employed by Defendant as a medical assistant from March 1, 2010 until she was terminated on January 25, 2011. *Id.* at ¶¶ 5 and 16. She alleges that her disability and medical leave usage were motivating factors in Defendant's decision to terminate her employment. *Id.* at ¶ 18. Plaintiff alleges that leave and accommodation in the form of periodic absences so that she could attend doctors' appointments were requested by her and that such leave was protected by the ADA. *Id.* at ¶ 7. However, she does not allege that she was denied such accommodation.

Summary judgment is appropriate if the pleadings, affidavits and depositions "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant need only point out that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U. S. 317, 325 (1986). Then, the non-moving part must go beyond the pleadings and set forth specific facts demonstrating that there is a triable issue. *Id.* at 323. On a motion for summary judgment, the Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1402 (10th Cir. 1997).

The parties agree on the essential elements of a disability discrimination *prima facie* case. Those elements are: 1) that the plaintiff is disabled within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; 2) that the plaintiff is qualified, with or without reasonable accommodation, to perform the essential functions of the job held; and 3) that the plaintiff was discriminated against because of her disability. *See Mason v. Avaya Communications, Inc.,* 357 F.3d 114, 1118 (10th Cir. 2004). In support of her motion for partial summary judgment, Plaintiff asserts that there are no genuine issues of material fact as to the existence of all three elements. With regard to the third essential element, Plaintiff asserts that she meets that element because Defendant failed to provide medical leave as part of its duty to accommodate and failed to engage in the ADA-required interactive process. Defendant in its response to Plaintiff's motion and in support of its own motion asserts that Plaintiff has failed to show and cannot show that she was disabled while

employed by Defendant. Moreover, it asserts that Plaintiff was not qualified to perform the essential functions of her position, with or without accommodation. Finally, Defendant asserts that Plaintiff has failed to show and cannot show causation, i.e., that she was discriminated against because of her disability. Defendant makes other arguments as well in support of its own motion but those arguments, except those pertaining to Plaintiff's retaliation claim, addressed *infra*, are not relevant to the Court's disposition of these motions.

## Disability

Disability cases are now governed by the terms of the ADA Amendments Act of 2008 (ADAAA), which became effective January 1, 2009. *See* 110 P.L. 325, 122 Stat. 3553, 3559 §§ 1, 8. Under the ADAAA,"[t]he definition of disability in this [Act] shall be construed in favor of broad coverage of individuals under this [Act], to the maximum extent permitted by the terms of this [Act]." 42 U.S.C. § 12102(4)(A). Under the ADAAA, a "disability" is "a physical or mental condition that substantially limits one or more major life activities" of an individual. 42 U.S.C. § 12102(1)(A). However, now a "major life activity" for purposes of § 12102(1) "includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B). "An impairment that is episodic or in remission is a disability if it would substantially limit a major activity when active." 42 U.S.C. § 12102(4)(D). "The determination of whether an impairment substantially limits a major activity is to be made without regard to the ameliorative effects of mitigating measures" such as medication. 42

U.S.C. § 12102(4)(E)(i). There is authority, however, that mitigating measures as referenced in the statute are only those which mitigate symptoms and not treatment that alleviates the condition in its entirety. *See Lewis v. Florida Default Law Group, P.L.*, 2011 WL 4527456 at *5 (M.D. Fla. Sept. 16, 2011).

Congress has said that "persons with minor, trivial impairments such as a simple infected finger are not impaired in a major life activity, and consequently those who had such minor and trivial impairments would not be covered by the ADA." H.R. Rep. No. 110-730, pt. 2, at 30 (2008). Major life activities are now "defined to include the operation of major bodily functions, thus better addressing chronic impairments that can be substantially limiting." 29 C.F.R. § 1630(2)(i) (*quoting* 2008 Senate Statement of Managers at 8). While an impairment need not prevent or even severely restrict an individual from performing a major life activity to be considered substantially limiting, "not every impairment will constitute a disability. . . ." 29 C.F.R. § 1630.2(j)(1)(ii). Thus, case law recognizes that temporary, short-term or non-severe conditions do not satisfy the definition of disability under the "actual" prong. *See Bush v. Donahoe*, __ F. Supp.2d __, 2013 WL 4045785 (W.D. Pa. Aug. 8, 2013) (collecting cases). *See also Butler v. BTC Foods, Inc.*, 2012 WL 5200189 (E.D. Pa. Oct. 19, 2012) (plaintiff not disabled by one-time occurrence of a hernia); *Sam-Sekur v. Whitmore Group, Ltd.,* 2012 WL 2244325 (E.D.N.Y. June 15, 2012) (plaintiff failed to qualify as disabled under the ADAAA as a result of her breast cancer scare, appendectomy, infection from an IUD and infected oral implant); *Gray v. Walmart Stores*, 2011 WL 1831780 (E.D. N.C. May 12, 2011) (brief descriptions of back and shoulder injury,

4

and right shoulder pain insufficient to allege disability). In *Wanamaker v. Westport Board of Education*, 899 F. Supp. 2d 193, 211 (D. Conn. 2012), the court specifically held that "even under the ADAAA's broadened definition of disability short term impairments would still not render a person disabled within the meaning of the statute."

In this case, Plaintiff had recurrent cellulitis of the left breast and infectious mastitis. *See* Plaintiff's Motion at p.10. She contends that this condition was a significant impairment to the functioning of her skin, connective tissue, and internal organs, *id*., and her circulatory system. *Id*. at p. 12.

Plaintiff's primary treating physician, Farhan Qureshi, M.D. testified that cellulitis of the breast is called mastitis. Qureshi Deposition (Exhibit 26 to Defendant's Motion) at p. 27. He testified that mastitis is the inflammation or infection of the soft tissue in the breast which may be bacterial or viral. *Id*. at 26. He stated that the symptoms of mastitis are erythema, that is, redness, increased temperature, pain and sometimes fever. *Id*. He said that cellulitis, a soft tissue infection anywhere in the body, *id.* at 27, and mastitis are treated by antibiotics, pain medications, anti-inflammation medications, and sometimes local treatments like pressure, heat or ice packs. *Id*. at pp.28-29. In a declaration dated March 28, 2013 submitted with Plaintiff's motion, Dr. Qureshi attested as follows:

> 4. Mastitis is the inflammation of tissue in one or both mammary glands inside the breast caused by a bacterial infection.
>
> 5. Infectious mastitis is very rare. While it is treatable, it is important to receive treatment immediately to prevent complications, such as abscess in the breast which requires surgical draining.

6. In its active and untreated form, mastitis causes the infected to experience the following symptoms: pain, inflammation and redness around the affected area, burning sensation in the breast, chills, elevated body temperature, fatigue, aches and pain, shivering and anxiety. Infectious mastitis has similar symptoms of inflammatory breast cancer (a rare form of breast cancer). In some cases, a biopsy may be necessary to rule out breast cancer.

7. Cellulitis is the inflammation of the soft or connective tissue, in which a thin, watery exudate (a cellular waste product) spreads through the cleavage planes of interstitial and tissue spaces (spaces between the cells of structure or parts of an organ); it may lead to ulceration and abscess.

8. Cellulitis is treatable, but can be serious, painful and lead to other potentially life threatening complications if it is not recognized and treated promptly. Depending on the level of infection, treatment can range from oral antibiotics and rest at home to treatment in a hospital with antibiotics that go right into the bloodstream. In the case of Ms. McKenzie-Nevolas the required treatment involved both antibiotics, pain management, appointments and follow-up. Her disease was recurrent and requires regular monitoring.

9. In its active and untreated form, cellulitis is a substantial impairment of the function and operation of the skin and organs infected. It causes the infection site to be warm, red, swollen and tender, giving the patient fever, chills, and swollen glands. If left untreated, the bacteria can spread beyond the skin layers and quickly through the body. Once the infection is below the skin, the bacteria can spread rapidly, entering the lymph nodes and blood stream, spreading throughout the body and vital organs. These complications result in lymphangitis, abscess formation, sepsis, and even death.

Qureshi Declaration (Exhibit 17 to Plaintiff's Motion).

The history of Plaintiff's mastitis as revealed from the record is that on December 3, 2010, Plaintiff saw Dr. Carla Werner complaining of symptoms of sinusitis and tenderness

in the left breast. *See* Exhibit 21 to Defendant's Response Brief. Dr. Werner indicated the presence of a left lateral breast cystic lesion and referred Plaintiff for a mammogram. *Id*. On December 6, 2010, Plaintiff went to the Deaconess Hospital Emergency Room, complaining of left breast pain and redness at the affected site and a history of local swelling. *See* Exhibit 22 to Defendant's Response Brief. Plaintiff's left breast was noted to be red and swollen and pain was noted over the left anterior chest wall and ribs. *Id*. Plaintiff was diagnosed with cellulitis, given a shot of rocephin, an antibiotic, and a prescription for Keflex, also an antibiotic. *Id*. She refused admission to the hospital. *Id*.

Dr. Qureshi examined Plaintiff on December 15, 2010. *See* Qureshi Deposition at p. 48-49. He testified that at that time, Plaintiff's cellulitis of the breast or mastitis was completely resolved, *id.* at 49, except that Plaintiff was still in a lot of pain. *Id*. at 50. Because there was a question of whether Plaintiff had a mass in or on the breast, Dr. Qureshi referred Plaintiff for an MRI to determine if there was an abscess in the breast. *See id*. at 49-53. On December 20, 2010, Plaintiff had a bilateral breast MRI. There were no significant findings relating to either breast – no masses or abnormalities, no evidence to suggest an abscess and no suspicious vascularity. *See* Exhibit 7 to Defendant's Response Brief and Exhibit 19 to Defendant's Motion.

On January 24, 2011, Plaintiff saw Brady S. Hagood, M.D.,a general surgeon, for evaluation of left-sided chest wall pain. *See id*. At that time, Dr. Hagood noted that Plaintiff said that since the time of her original complaint, the mammogram and ultrasound on December 7, 2010 and the MRI on December 20, 2010, the redness of her breast had

7

completely gone and that she currently had no breast pain, fever, chills, nausea or vomiting. *Id.* Dr. Hagood's assessment was no masses in either breast, no lymphadenopathy, some muscular tenderness along the lateral and posterior left chest, but no skin changes or masses, and the history of possible left breast abscess appeared to be completely resolved. *Id.*

Plaintiff's primary physician admitted that Plaintiff's cellulitis/mastitis lasted only 2 to 3 weeks. *See* OESC Medical Statement. (Exhibit 23 to Defendant's Response Brief) at p. 2. Although Plaintiff later did have two recurrences of mastitis, they were long after Plaintiff's employment was terminated, and no one could have known that she would have recurrences.

As a result of her mastitis or symptoms, Plaintiff was off work part of December 2 and December 3, 2010, and all of December 6 through December 10, 2010. *See* Plaintiff's Deposition (Exhibit 1 to Defendant's Response) at pp. 91, 127-28 and 132. On December 15, 2010, Plaintiff took an extended lunch break from 11:30 a.m. to 2:14 p.m. to see Dr. Qureshi for follow-up. *See* Exhibit 14 to Defendant's Motion. On December 20, 2010, Plaintiff left work at 11:11 a.m. for an MRI. *See* Exhibits 14 and 19 to Defendant's Motion.

Subsequent to the resolution of Plaintiff's mastitis, except for residual pain, Plaintiff took time off work to see Dr. Qureshi on January 18, 2011, for consultation with Dr. Hagood on January 24, 2011, and to again see Dr. Qureshi on January 25, 2011 (although Plaintiff told the Clinic Supervisor that she was going to run some errands).

It is undisputed that no breast abscess was ever found in Plaintiff's left breast, that Plaintiff never required drainage of her breast or a breast biopsy, and that the limited breast infection did not spread to other parts of Plaintiff's body. It is also undisputed that neither Dr. Qureshi nor any other doctor placed any restrictions or limitations on Plaintiff, including any lifting restriction, as a result of her mastitis or treatment therefor. Dr. Qureshi did sign a note saying that Plaintiff should be off work from January 18 to January 26 for doctors' appointments.

Based upon this record, the Court finds that there is no genuine issue of material fact that Plaintiff did have a physical impairment, mastitis, that affected the operation of a major bodily function, the skin and soft tissue. However, the impairment was an infection that was limited to the skin and soft tissue of the left breast. In addition, the infection was of short duration, either 2 to 3 weeks at most or from December 2, 2010 to December 15, 2010, at the least. Because Plaintiff's infection (impairment) was limited to one part of her body and was not chronic but temporary and of short duration, the Court finds that there is no genuine issue of material fact regarding disability, and that Plaintiff did not have a disability which substantially limited one or more major life activities, i.e., which substantially limited the operation of Plaintiff's skin and soft tissue. Reasonable jurors could not find that Plaintiff had a "disability" within the meaning of the ADAAA. Moreover, there is no genuine issue of material fact that at the time of her termination on January 25, 2011, Plaintiff did not have a "disability" within the meaning of the ADAAA. At that juncture, Plaintiff had only some muscle tenderness and intermittent pain on the left side which she has not shown

9

substantially limited one or more of her major life activities, inclusive of the operation of a major bodily function. Indeed, Plaintiff's treating doctor testified that after the two or three week period when Plaintiff had mastitis, her ability to do life activities was not substantially affected. *See* Qureshi Deposition (Exhibit 26 to Defendant's Motion) at pp. 118-120.

<u>Qualified, With or Without Reasonable Accommodation</u>

Whether an individual is "qualified" within the meaning of the ADA is determined by a two-part analysis: First, whether the individual can perform the essential functions of the job; and second, if the individual is unable to perform the essential functions of the job, whether any reasonable accommodation by the employer would enable her to perform those functions. *See Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). Plaintiff has the burden of showing that she was able to perform the essential functions of her job. *Id.* at 1119 (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002)). "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. §1630.2(n)(1).

Plaintiff's job duties as a Medical Assistant included such things as "work[ing] up patients and assist[ing] physicians with patient exams and procedures, and perform[ing] procedures and C.L.I.A-waived lab tests as directed by physicians." *See* Job Description (Exhibit 4 to Defendant's Response). Inherent in those duties is the requirement of physical presence or attendance. Moreover, Defendant's policy regarding Discipline and Termination of Employment provides that excessive absenteeism or tardiness may result in disciplinary action, up to and including termination. *See* Policy B.7 (Exhibit 19 to Defendant's Response)

at p. 4. Defendant also has an Attendance Policy which provides that "if an employee accumulates seven or more 'Incidents of Absence' or 'Tardy' in a rolling 12-month period for any reason except an approved leave of absence, the employee will be subject to termination." *See* Policy 2 (Exhibit 19 to Defendant's Response) at p. 20. The Attendance Policy also provides as follows with respect to "Repeated Absenteeism":

> It must be recognized that there may be instances in which an employee's absence due to illness or injury, even though excused and not the fault of the employee, becomes as excessive or repetitive as to render continued employment inappropriate.

*Id.*

From March 2010 through November 2010, Plaintiff took off work to attend doctors' appointments on 7 occasions. During that same period, Plaintiff either left work early or was off work the entire day on 16 occasions due to Plaintiff's being sick or caring for a sick family member. Plaintiff's absences during December of 2010 and January of 2011 are described above.

On August 11, 2010, Plaintiff received an Employee Disciplinary Action Notice of a verbal warning for excessive absences. Exhibit 12 to Defendant's Response. The explanation of Plaintiff's offense in that notice stated that "Susan has not worked the requirements to maintain a full time status medical assistant position" and that "[s]he has had excessive absences in the last 2½ months causing a hardship on the clinic and other coworkers." *Id*. The notice indicated that Plaintiff's supervisor discussed with Plaintiff the

importance of being at the clinic and working her hours and it was agreed that Plaintiff must stay through Dr. Winzenread's work schedule. *Id.*

Plaintiff also received another Employee Disciplinary Action Notice on December 13, 2010, of a written warning for excessive absenteeism and failure to comply with Hospital Policy. *See* Exhibit 17 to Defendant's Response. In her explanation of the offense, Plaintiff's supervisor wrote that she "discussed that absenteeism, whether excused or unexcused, interferes with healthcare delivery, is detrimental to patient care and often causes hardship on co-workers" and that she informed "[Plaintiff] that an employee cannot exceed 6 incidents of absence in a 12 month period and that she had already exceeded this." *Id.* The Defendant's Human Resources generalist testified at the OESC hearing that Plaintiff was told at the time of her written warning on December 13, 2010, that if she missed any other work she would be terminated. *See* Transcript of Administrative Hearing of the Oklahoma Employment Security Commission (Exhibit 1 to Plaintiff's Motion) at pp. 21-22.

Nevertheless, all of Plaintiff's absences for sickness and doctors' appointments in December of 2010 and January of 2011 were apparently excused except that on January 25, 2011, when Plaintiff left work at approximately 11:35 a.m. and did not return until approximately 1:35 p.m., after clinic had resumed at 1:00 p.m., telling the clinic supervisor she was going to run errands while she went to see Dr. Qureshi. On that occasion Plaintiff did not clock back in. On that day, Plaintiff was given the option of resigning or being terminated due to excessive absenteeism, failing to clock-in in violation of Defendant's

policy, and failing to advise her employer until that day that per Dr. Qureshi's note, she was supposed to be off work "for Dr. appts." from January 18 to January 26, 2011.

It is obvious from the description of Plaintiff's job duties, Defendant's attendance and disciplinary policies, and the notices of disciplinary action Plaintiff received, that an essential function of Plaintiff's position was physical presence or attendance during clinic hours to assist the physicians in the delivery of healthcare. Indeed, "[a]ttendance is generally an 'essential' function of any job." *Cisneros v. Wilson,* 226 F.3d 1113, 1129 (10th Cir. 2000). *See Mason v. Avaya Communications, Inc.*, 357 F.3d at 1119 ("Other circuits have recognized physical attendance in the workplace is itself an essential function of most jobs."). *See also Murphy v. Samson Resources Co.*, 525 F. App'x 703, 705-07 (10th Cir. 2013) (because attendance was an essential function of the plaintiff's position, the plaintiff was not a qualified individual within the meaning of the ADA); *Valdez v. McGill*, 462 F. App'x 814, 817-19 (10th Cir. 2012) (same). Because of Plaintiff's excessive absences, there is no genuine issue of material fact that she was not qualified for her position within the meaning of the ADA. Reasonable jurors could not find otherwise.

<u>Retaliation</u>

Both parties seek summary judgment on Plaintiff's retaliation claim. Defendant seeks summary judgment on this claim on the ground that Plaintiff failed to exhaust her administrative remedies as to that claim. Plaintiff did not check the box for "retaliation" on her Charge of Discrimination, checking only the box labeled "disability." *See* EEOC Charge

of Discrimination (Exhibit 47 to Defendant's Motion). In the "particulars" section of the Charge, Plaintiff stated that she requested and was denied accommodation for her medical condition and that she was later terminated, but nowhere does she allege she was terminated because she requested a reasonable accommodation or because she protested the failure to accommodate her. *Id*. In fact, Plaintiff summarized her claim by stating "I believe that I have been subjected to disparate treatment due to my disability or being regarded as having a disability in violation of the Americans with Disabilities Act of 1990, as amended." *Id.* The EEOC's right-to-sue letter indicates that it did not investigate Plaintiff's claim as one for retaliation. *Id*.

The Court concludes that no reasonable person would read Plaintiff's Charge of Discrimination as including a claim for retaliation. There is no genuine issue of material fact that Plaintiff failed to exhaust her administrative remedies for an ADA retaliation claim, leaving the Court without jurisdiction to entertain such a claim. See *Self v. I Have A Dream Foundation-Colorado,* ___F. App'x ___, No. 13-1090, 2013 WL 6698079 at *4 -*5 (10th Cir. Dec. 20, 2013) (failure to include ADA retaliation claim in EEOC charge resulted in lack of administrative exhaustion and deprived district court of jurisdiction) (citing *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)).

Conclusion

In light of the foregoing, the Court finds it unnecessary to address other issues raised in the parties' motions. Plaintiff's motion for partial summary judgment [Doc. No. 84] is DENIED, and Defendant's motion for summary judgment [Doc. No. 106] is GRANTED.

IT IS SO ORDERED this 7th day of February, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE